847 So.2d 43 (2003)
Bonnie Mae JONES, Plaintiff-Appellant,
v.
BROOKSHIRE GROCERY COMPANY, Defendant-Appellee.
No. 37,117-CA.
Court of Appeal of Louisiana, Second Circuit.
May 14, 2003.
*45 Anthony J. Bruscato, Monroe, for Appellant.
Hudson, Potts & Bernstein, L.L.P., by Jay P. Adams, Monroe, for Appellee.
Before CARAWAY, PEATROSS & MOORE, JJ.
PEATROSS, J.
In this trip and fall case, Plaintiff, Bonnie Mae Jones, age 74, claims that her foot got caught in a wrinkle in the rug at the exit of a Brookshire grocery store causing her to fall to her knees and then flat on the floor, sustaining injuries. Finding that Ms. Jones failed to satisfy her burden under La. R.S. 9:2800.6, the trial court entered judgment in favor of Defendant, Brookshire Grocery Company ("Brookshire"), *46 dismissing Ms. Jones's claim with prejudice. Ms. Jones appeals and, for the reasons stated herein, we affirm.

FACTS
On December 15, 2000, Ms. Jones was shopping in a Brookshire store in Monroe with her friend, Jonell Minter. Mrs. Minter drove Ms. Jones, who was widowed in 1998, to the grocery store every week. On this particular day, Mrs. Minter finished her shopping before Ms. Jones and went to a neighboring store to shop and then to her car to wait for Ms. Jones. As Ms. Jones exited the store, accompanied by courtesy clerk[1] Tony Powell, she stumbled and fell when she began to cross a large mat adjacent to the exit doors. These large mats are rubber-backed and are placed at each entrance/exit and in other areas of the store as needed. It had been raining earlier in the day and was periodically misting.
Mr. Powell testified that Ms. Jones was walking to the exit slightly ahead of him and on his right. He saw Ms. Jones suddenly stumble and fall to her knees with her knees landing on the mat and the toes of her shoes remaining on the hard floor surface. She then fell flat on the floor. Mr. Powell turned and called to the assistant store manager on duty, Mark Bryan, for assistance. Mr. Bryan was standing at a checkout counter, but did not see Ms. Jones fall as he had his back to the area where the fall occurred. Meanwhile, Ms. Jones got to her feet unassisted, noticing that her right foot was caught in a wrinkle or buckle at the edge of the mat. Mr. Bryan asked Ms. Jones if she was hurt, to which she replied that she was probably all right, but her knees and lower back were hurting. Mr. Bryan testified that he requested that Ms. Jones remain in the store while he filled out an accident report; however, she declined, stating that she was shocked and embarrassed and wanted to get home. Accompanied by Mr. Bryan, Mr. Powell loaded Ms. Jones's groceries into Mrs. Minter's vehicle and the two left.
Mr. Bryan also testified that Ms. Jones stated immediately after the fall that she tripped and fell, but that she did not know what caused her fall. He further testified that, after seeing Ms. Jones to her vehicle, he immediately returned to the store and inspected the area where she had fallen. He saw no wrinkles or buckles or anything else that could have caused her to fall; and, according to Mr. Bryan and Mr. Powell, the mat was flat when they returned to the store. Neither Mr. Bryan nor Mr. Powell straightened the mat after Ms. Jones's fall.
Shortly after the accident, Mr. Bryan asked Mr. Powell to write a narrative of what had happened since he did not have the necessary information from Ms. Jones with which to complete the "Customer Report of Accident" form. Mr. Powell's narrative indicates only that Ms. Jones stumbled and fell just inside the exit door. It does not mention what caused the fall or the existence of a wrinkle or buckle in the mat. Mr. Bryan also testified that he took photographs of the area "a few seconds" after the fall, which revealed no wrinkling or buckling in the mat.[2]
*47 Ms. Jones testified that, as she was walking out of the store, she felt something grab her foot and then she fell to her hands and knees. She did not see a wrinkle or buckle before she fell, but noticed it only after she had fallen and was getting back up. She acknowledged that there was nothing foreign on the floor and that nothing prevented her from seeing a wrinkle or buckle in the mat. She did not know how long the alleged wrinkle or buckle had been there or how the mat became wrinkled or buckled. She did testify that the alleged wrinkle was "obvious" and that "anyone could see it;" however, a complete reading of her testimony indicates that she was referring to the wrinkle as she saw it after getting up from the fall, not before the fall.
Mrs. Minter testified that she had not noticed a wrinkle in the mat when she left the store shortly before Ms. Jones. Both Mrs. Minter and her husband testified that, both before and since the accident, they have, on occasion, noticed the mats at the exit of Brookshire to be wrinkled or buckled, but they also noticed employees smoothing them out.
Mr. Powell testified that it is part of his job duties to monitor the mats and that he is vigilant in doing so. He stated that he did not notice the condition of the mat as he and Ms. Jones walked toward the exit and he did not see any wrinkle or buckle after Ms. Jones's fall. He did not see anything that she could have tripped or fallen over. Mr. Powell testified that he looks at the mats periodically all day long.
Mr. Bryan testified that it is the duty of the cashiers and courtesy clerks to continually monitor the entrance and exit areas, including the mats. He acknowledged that sometimes the mats will buckle or the edges will flip up if someone is scuffing or shuffling their feet; however, when this happens, the employees straighten out the mats. He maintained that Ms. Jones did not tell him at the time of the accident that a wrinkle in the mat caused her to fall, nor did anyone else tell him at that time that there was a wrinkle in the mat or that any such wrinkle caused Ms. Jones to fall.
Mr. Bryan did fill out an accident report approximately three weeks after the accident (January 5, 2001) when Ms. Jones came back in the store to talk with him because Medicare had inquired about whether there would be a third-party payor on her medical bills.[3] Much argument is made over the significance of the information recorded on this accident report because Mr. Bryan's testimony at trial regarding Ms. Jones's fall differs from the responses he wrote on the accident form. For example, for the customer's version of how the accident occurred, Mr. Bryan recorded, "was walking out foot went under wrinkle on rugs & customer fell in front of exit door." He then recorded for the description of the condition of the location of the fall that, "rugs in front of door & had wrinkle in rugs." In addition, he marked "no" in response to the question of whether *48 he inspected the location after the accident. When questioned at trial about the responses on the accident form, Mr. Bryan testified that, when Ms. Jones returned to the store three weeks after her fall, he simply recorded her comments or her "version" of how she tripped and fell. Both Mrs. Minter and Ms. Jones agreed that Mr. Bryan asked questions of Ms. Jones and recorded her answers. Mr. Bryan admitted that he had filled out the report incorrectly, explaining that he was not very familiar with the accident form as he had only filled out a few over his 13 years of employment with Brookshire.
As previously stated, after watching the witnesses testify and hearing all of the evidence, the trial court found that Ms. Jones failed to meet her burden under La. R.S. 9:2800.6 and it provided thorough written reasons for judgment. Specifically, the trial court found that Ms. Jones failed to prove the existence of any wrinkle in the mat. Significantly, the trial court noted that Ms. Jones could only speculate that a wrinkle existed prior to her fall and that it was this alleged wrinkle that caused her to stumble. Further, the court pointed out that it was possible to conclude under the evidence presented that Ms. Jones may have caused a wrinkle by "moving her feet either into or over the mat." The trial court further held that, even assuming a wrinkle was present, Ms. Jones failed to prove that the store had actual or constructive knowledge of any such wrinkle as she could only speculate as to how long the alleged wrinkle had been there or what had caused it. Finally, the trial court found that, even if a wrinkle was there and caused Ms. Jones's fall, the employees of the store exercised "reasonable care by constantly monitoring the area." Accordingly, the trial court dismissed Ms. Jones's claim with prejudice.
On appeal, Ms. Jones raises the following three assignments of error:
1. The trial court committed manifest error in concluding that Ms. Jones failed to prove that a wrinkle caused her fall.
2. The trial court committed manifest error in concluding that Ms. Jones failed to prove that the store owner had actual or constructive knowledge of the wrinkle. Alternatively, the trial court committed legal error in concluding that a store owner with constructive knowledge of a dangerous condition can avoid liability by proving the existence of a regular clean-up schedule.
3. This Honorable Court should review the evidence de novo and should award damages to Ms. Jones.

DISCUSSION
Merchant liability for slip or trip and fall cases is governed by La. R.S. 9:2800.6, which places a heavy burden of proof on plaintiffs in claims against a merchant for damages arising out of a fall on the premises. La. R.S. 9:2800.6 provides, in pertinent part, as follows:
§ 2800.6. Burden of proof in claims against merchants
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's *49 premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
A plaintiff must prove each of three elements set forth in section B; failure to prove any of these required elements will prove fatal to a plaintiff's claim. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081; Alexander v. Wal-Mart Stores, Inc., 96-1598 (La.App. 3d Cir.2/4/98), 707 So.2d 1292, writ denied, 98-0572 (La.4/24/98), 717 So.2d 1169. The supreme court in White, supra, held that, in addition to proving each of the above three elements, a plaintiff must "come forward with positive evidence showing that the damage causing condition existed for some period of time and that such time was sufficient to place a merchant defendant on notice of its existence." White, supra. See also Turner v. Brookshire Grocery Company, 34,562 (La.App.2d Cir.4/4/01), 785 So.2d 161, citing Rodgers v. Food Lion, Inc., 32,856 (La.App.2d Cir.4/5/00), 756 So.2d 624, writ denied, 00-1268 (La.6/16/00), 765 So.2d 339; Davis v. Wal-Mart Stores, Inc., 31,542 (La.App.2d Cir.1/22/99), 726 So.2d 1101. This element is referred to as the "temporal" element. Absent some showing of the temporal element, there can be no inference of constructive knowledge. While there is no bright line time period, a plaintiff must show that the condition existed for "such a period of time." Kennedy v. Wal-Mart Stores, Inc., 98-1939 (La.4/13/99), 733 So.2d 1188.
Merchants are required to exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risks of harm and warn persons of known dangers. Turner, supra; Ward v. ITT Specialty Risk Services, Inc., 31,990 (La.App.2d Cir.6/16/99), 739 So.2d 251, writ denied, 99-2690 (La.11/24/99), 750 So.2d 987; Leonard v. Wal-Mart Stores, Inc., 97-2154 (La.App. 1st Cir.11/6/98), 721 So.2d 1059. Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons. Turner, supra; Ward, supra; Tanner v. Brookshire Grocery Company, 29,276 (La. App.2d Cir.4/2/97), 691 So.2d 871. A store owner is not liable every time an accident happens. Turner, supra; Ward, supra; Leonard, supra.
The merchant's duty of care requires that reasonable protective measures, including periodic inspections, are undertaken to ensure that the premises are kept free from substances or conditions that might cause a customer to fall. *50 See Hardman v. The Kroger Company, 34,250 (La.App.2d Cir.12/6/00), 775 So.2d 1093; Ward, supra; Stevens v. Winn Dixie of Louisiana, 95-0435 (La.App. 1st Cir.11/9/95), 664 So.2d 1207. Whether measures taken are reasonable must be determined in light of the circumstances of each case. Hardman, supra; Ward, supra. As noted by the court in Stockwell v. Great Atlantic & Pacific Tea Co., 583 So.2d 1186 (La.App. 1st Cir.1991) (citations omitted), the degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store and other relevant considerations.
A trial court's findings regarding liability for damages caused by a slip and fall accident at the defendant's place of business, as well as the presence of comparative fault, are factual determinations that will not be disturbed absent manifest error or unless clearly wrong. Barton v. Wal-Mart Stores, 97-801 (La. App. 3d Cir.12/10/97), 704 So.2d 361; Myles v. Brookshires Grocery Co., 29,100 (La.App.2d Cir.1/22/97), 687 So.2d 668. In addition, whether a condition existed for a sufficient period of time that a merchant should have discovered the condition is a fact question; however, there remains the prerequisite showing of some time period. Kennedy, supra.
After our thorough review of the entire record in the case sub judice, we find no manifest error in the trial court's findings that Ms. Jones failed to prove the existence of a wrinkle in the mat or that the store was reasonable in its efforts to keep the exit area clean and free of hazards. In addition, and most significantly, we can find no evidence whatsoever regarding the temporal element, or the length of time the wrinkle, if any, existed prior to Ms. Jones's fall. We now turn to Ms. Jones's first assignment of error.
In her first assignment of error, Ms. Jones argues that the trial court erred in finding that she failed to prove that a wrinkle in the mat caused her fall. In fact, the trial court actually found that Ms. Jones failed to prove the existence of a wrinkle at all or that such wrinkle caused her fall. We find ample evidence in the record to support this reasonable conclusion of the trial court. No employee of Brookshire testified that they saw a wrinkle in the mat before or after Ms. Jones fell. Mr. Powell, who was walking slightly behind and to the left of Ms. Jones did not see a wrinkle in the mat. Even Ms. Jones admitted throughout her testimony that she did not see a wrinkle in the mat before she fell and that there was nothing in the area that might have obstructed her view of any such wrinkle. It was not until after she fell and was getting up that Ms. Jones noticed that her foot was caught beneath the mat. Even then, however, she did not state this wrinkle as having been the cause of her fall. Further, Mr. Bryan testified that the mats can sometimes wrinkle or flip up on the edges from the shuffling of feet as one begins to cross the mat. In light of this testimony, we cannot say that the trial court's conclusions that Ms. Jones was only speculating that it was a wrinkle that caused her fall and that "it cannot even be said that the wrinkle did not occur as a result of Ms. Jones moving her feet either into or over the mat" are manifestly erroneous or clearly wrong.
Ms. Jones urges this court to place significance on the incorrectly completed or altered accident report created by Mr. Bryan three weeks after the accident when Ms. Jones returned to the store after Medicare's query regarding a third-party payor of her medical bills. In his testimony, Mr. Bryan explained the recorded information and alleged alterations on the accident report, stating that he had *51 merely recorded Ms. Jones's version of the accident on the form. Ms. Jones and Mrs. Minter corroborated Mr. Bryan's testimony in this regard. Mr. Bryan also admitted that he had not correctly filled out the form. The trial court was able to view the demeanor of Mr. Bryan and chose to credit his testimony regarding the circumstances of Ms. Jones's fall and the completion of the accident report. We find no error in the trial court's conclusion in this regard.
In her second assignment of error, Ms. Jones urges that the trial court manifestly erred in finding that she did not prove that the store owner had actual or constructive knowledge of any wrinkle in the mat. Initially, we note that, assuming there was a wrinkle in the mat prior to Ms. Jones's fall, there is no evidence in the record which suggests that there was actual notice to the store owner of a wrinkle. Ms. Jones, therefore, must rely on constructive notice, which requires satisfaction of the temporal element, or proof that the dangerous condition existed for such a period of time that it would have been discovered had the merchant exercised reasonable care. Again assuming that any wrinkle existed prior to her fall, there was no evidence that any customer or Brookshire employee reported seeing a wrinkle prior to Ms. Jones's fall. As previously mentioned, even Ms. Jones testified that she did not see a wrinkle prior to her fall. Further, there is no evidence whatsoever of how any such wrinkle was created or how long it had been there.
Ms. Jones submits that constructive notice existed when Mr. Powell assumed the responsibility of assisting her from the checkout counter, out of the store and to her vehicle. She argues that Mr. Powell had an unobstructed view of the mat and should have seen the alleged wrinkle and prevented the accident. We disagree. It is true that a courtesy clerk is charged with the responsibility of monitoring the condition of the entrance to and exit from the store. Mr. Powell testified that he was vigilant in performing this duty and was observing these areas periodically on the day of the accident. He testified that he walked in and out of the store many times that day and did visual inspections each time. Mr. Powell did not, however, have an unobstructed view of the mat where Ms. Jones fell as he was pushing her loaded grocery cart toward the exit door. He was walking slightly behind and to the side of Ms. Jones and, therefore, it would have been difficult for Mr. Powell to be constantly aware of the conditions on the floor directly ahead of Ms. Jones. We find Ms. Jones's argument unpersuasive on this issue and agree with the trial court's statement that
[t]he law does not require [a courtesy clerk] to constantly look down at the floor as he walks and tries to assist a shopper with their groceries, as this would be unreasonable. The law only requires reasonable protective measures including periodic inspections.
In Robinson v. Brookshires # 26, 33,713 (La.App.2d Cir.8/25/00) 769 So.2d 639, this court dealt with a case involving very similar facts wherein the plaintiff tripped and fell over an alleged "pucker" in a mat placed in the produce section of a Brookshire store. With no evidence of actual notice, the plaintiff in Robinson had to show that the pucker in the rug existed for such a period of time so as to allow constructive notice to be established. As in the present case, the plaintiff in Robinson testified in her deposition that she did not see the pucker prior to her fall. She further stated that she had no idea how long the pucker had been there; but, because of its size (approximately 2½ inches high), she opined that it must have been that way for a long time. Unlike the *52 present case, however, a Brookshire employee and another witness in Robinson testified by deposition that they saw the pucker in the rug before plaintiff's fall and witnessed the fall. In Robinson, this court concluded that the evidence produced in opposition to Brookshire's motion for summary judgment fell short of "factual support sufficient to establish a credible possibility that the condition existed long enough that it would have been discovered if Brookshire had exercised reasonable care."
Ms. Jones's showing regarding the temporal element in the case sub judice falls short of the evidence produced in Robinson. In fact, there exists only Ms. Jones's speculation that there was a wrinkle and that such wrinkle caused her fall and there is no evidence concerning the length of time the wrinkle, if any, had existed prior to the fall. In summary, a trial court's determination of whether a merchant had constructive notice of a condition creating an unreasonable risk of harm to customers is a factual finding that may not be set aside on appeal absent a showing of manifest error and we find no such error to exist in this case.
Finally, we find that it was reasonable for the trial court to conclude that the utility of the mats outweighs the risk of a trip and fall such as what allegedly happened in this case.[4] The mats involved in this case have a high utility for absorbing rain water from customers' feet as they enter the store and provide a non-slip surface in other areas of the store. The mats are rubber-backed to prevent slippage and are rotated and cleaned on a weekly basis. Mr. Bryan agreed that the mats occasionally wrinkle or buckle if a string of many grocery carts is pushed over the mat or if a person shuffles their feet when walking over a mat. He noted, however, that most carts are returned to the store from the parking lot one at a time by the courtesy clerk assisting each customer. He further explained that, in the event a mat becomes wrinkled, the employees are prompt in straightening the mats. As previously stated, both the cashiers and the courtesy clerks are responsible for continuously monitoring the entrance and exit areas for safety and cleanliness. Significantly, Mr. Bryan testified that, in his 13 years of employment with Brookshire, this is the only accident of this type (tripping over a wrinkle or buckle in a mat) of which he was aware. We believe that the trial court properly concluded that Brookshire's efforts to keep the exits safe and clean were reasonable and effective.
In light of these conclusions, we pretermit any discussion of Ms. Jones's alternative arguments, request for de novo review and award of damages.

CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Defendant, Brookshire Grocery Company, dismissing the claim of Plaintiff, Bonnie Mae Jones, is affirmed at Plaintiff's cost.
AFFIRMED.
NOTES
[1] A courtesy clerk's job duties include bagging groceries at the checkout, assisting customers to their vehicles and returning the grocery carts to the store. In addition, as discussed later in this opinion, a courtesy clerk is also charged with the responsibility of monitoring the entrance to and exit from the store for cleanliness and safety hazards.
[2] These photographs were apparently placed in a file in the office of the store and were not located until the time of Mr. Bryan's deposition. They were produced at that time. Ms. Jones places significance on the "late" production of the photographs, arguing that the photographs were part of a conspiracy to alter evidence regarding the circumstances of her accident. The trial court apparently placed little significance on the photographs, not even mentioning the same in its nine-page reasons for judgment. We are inclined to agree with the trial court that the existence of the photographs does not materially affect the resolution of this case and the production of the photographs at Mr. Bryan's deposition afforded Ms. Jones ample time to respond to and defend against any evidentiary value the photographs held.
[3] According to Ms. Jones, Brookshire's policy requires a manager to complete an accident report within three days of an accident, which obviously was not done in the present case.
[4] We note that this is not a case where a merchant places an inherently and unreasonably dangerous product, the mat, in the store which causes an injury to a customer. No evidence was presented regarding any unreasonably dangerous properties of the mat itself and no argument has been made to that effect. To the contrary, Mr. Bryan testified as to the high utility of the mats and the low risk of falls or injuries related to the mats. In addition, recall that Mrs. Minter and her husband both testified that they shop frequently at Brookshire stores and rarely see the mats wrinkle; but, on the occasions when they have noticed wrinkles, the store employees promptly straighten the mats.