911 So.2d 408 (2005)
Ericka BELL, Plaintiff-Appellee
v.
AMERICAN GENERAL INVESTMENT L.L.C., Cracker Barrel Stores and Millennium Insurance Co., Defendants-Appellants.
No. 40,117-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 2005.
*409 Michael L. Dubos, Monroe, for Appellant.
Louis Granderson Scott, for Appellee.
Before GASKINS, PEATROSS and DREW, JJ.
GASKINS, J.
American General Investment, L.L.C. ("American General") appeals from a judgment against it in favor of the plaintiff, Ericka Bell. We reverse and render judgment in favor of the defendant, American General.

FACTS
This is a personal injury action arising from a slip-and-fall accident at a convenience store. On May 30, 2002, Ms. Bell went into the Cracker Barrel store on Jackson Street in Monroe, Louisiana. Ms. Bell, who was five months pregnant at the time, went into the store to get a cup of ice. She walked to the self-serve fountain drink and ice dispenser and tried to get some ice in her cup, but the machine was out of ice.
Ms. Bell testified that she asked the store manager, Belonda Marshall, to reload the ice machine, and that Ms. Marshall went into the back of the store and came back with a bucket full of ice to refill the machine. Ms. Bell did not see any ice spill out onto the floor. Ms. Bell testified that Ms. Marshall asked her to come into a back room where the ice maker was located. Ms. Marshall, by contrast, testified that she never refilled the ice machine and that Ms. Bell remained in the hallway leading to the back room. The hallway and the room where the ice machine is located *410 are both in a private area of the store where customers are not usually invited.
Ms. Marshall took Ms. Bell's cup and filled it with ice. Ms. Bell testified that she thanked Ms. Marshall and turned to walk out of the room when she slipped and fell. At trial Ms. Bell was asked:
Q: [W]hat was it that you slipped in?
A: It had to be some water. It had to be a puddle of water somewhere.
Q: Well, was it water?
A: Yes sir.
Ms. Bell could not remember seeing any water on the floor but said that she was paying attention to Ms. Marshall. Ms. Marshall did not see Ms. Bell fall; she had returned to shut the lid on the ice machine. Ms. Marshall testified that she had not seen anything on the floor and that if she had, she would not have let Ms. Bell enter the hallway. Ms. Marshall testified that it was not raining on the day of the accident, and there were no drains or plumbing in the area from which water could spill or leak. There is an air intake vent at the end of the hallway for the store's HVAC system. The area is also near the store's freezer and another large drink cooler. Ms. Marshall answered a question from the court about this area:
Q: So, there's never been a problem or has the store ever experienced a problem with there being condensation or drippage from that area?
A: No ma'am. No, not since I been there. Well, Ms. Dean ... uh ... I had been there like a year, before I came to that store in 2002. This was 2003 and I hadn't had a problem out of it while I was there.
Ms. Marshall testified that on the day of the fall, the vent was not leaking water. After the fall, the ice from Ms. Bell's cup was scattered all around the floor; Ms. Marshall testified that this spilled ice was the only foreign substance she saw on the floor after Ms. Bell fell.
There are several pictures of the hallway included as exhibits in the record. They show a worn linoleum-like floor that is discolored in the hall area, which is beyond normal customer traffic. The plaintiff's counsel asked Ms. Marshall about the stains on the floor; Ms. Marshall responded by saying:
A: I don't know what that is. It is not water.
Q: Okay. Is it not like fresh water but isn't that stains from old water marks?
A: Those, uh  if those stains probably are still there. Like I say, since I've been there, I had nothing leaking in that hallway. I don't know if that's a stain on, you know, I don't know to be honest.
The photos also show a mop bucket in the room where the ice machine is located. Ms. Marshall said that she usually mopped the floor of the store at about the time of day that Ms. Bell fell, but had not done so that day because the store was so busy.
Ms. Bell injured her back and buttocks in the fall and she was very concerned that she had injured her unborn child. Ms. Bell's husband, Tyrone, came into the store at that point and helped his wife; Ms. Marshall called an ambulance for Ms. Bell. The ambulance transported Ms. Bell to a nearby hospital where she was observed for several hours. The examination did not find any harm to the unborn child, and Ms. Bell was released.
She returned to see her doctor several times over the next few weeks for treatment of pain. She also missed work for three months at the cleaning service she operated with her husband; however, her husband was able to do the work himself *411 so her lost time did not result in a loss of income to the family.
Ms. Bell sued, inter alia, American General, the owner of the convenience store. Trial was held on January 18, 2005. After hearing the testimony of the witnesses, the trial judge found that Ms. Bell had injured herself in the fall, found that American General was the sole defendant responsible, and awarded her $8,250.00 in general damages and $1,499.65 in special damages for her hospital, doctor and ambulance bills. The court did not state any of its findings regarding any foreign substance on the floor or its impression of the witnesses' credibility. American General now appeals.

DISCUSSION
American General raises two assignments of error on appeal. The defendant urges that the trial court erred in finding that Ms. Bell satisfied her burden under La. R.S. 9:2800.6 and that the trial court erred by awarding excessive damages. We find merit in the first of these allegations.
La. R.S. 9:2800.6 provides, in part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
A plaintiff must prove each of three elements set forth in section B; failure to prove any of these required elements will prove fatal to a plaintiff's claim. White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081; Jones v. Brookshire Grocery Co., 37,117 (La.App. 2d Cir.5/14/03), 847 So.2d 43. To prove constructive notice, a plaintiff must "come forward with positive evidence showing that the damage causing condition existed for some period of time and that such time was sufficient to place a merchant defendant on notice of its existence." White v. Wal-Mart Stores, Inc., supra; Jones v. Brookshire Grocery Co., supra. In Kennedy v. Wal-Mart Stores, Inc., XXXX-XXXX *412 (La.4/13/99), 733 So.2d 1188, the supreme court explained that the legislature has set forth a clear and unambiguous definition of the term, "constructive notice." In citing White v. Wal-Mart Stores, Inc., supra, the supreme court stated:
There is a temporal element included: "such a period of time . . ." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden.
Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time..." Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
(Emphasis in original.)
Merchants are required to exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risks of harm, and warn persons of known dangers. Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons. A store owner is not liable every time an accident happens. Jones v. Brookshire Grocery Co., supra.
A trial court's findings regarding liability for damages caused by a slip-and-fall accident at the defendant's place of business, as well as the presence of comparative fault, are factual determinations that will not be disturbed absent manifest error or unless clearly wrong. Jones v. Brookshire Grocery Co., supra; Myles v. Brookshires Grocery Co., 29,100 (La.App. 2d Cir.1/22/97), 687 So.2d 668. In addition, whether a condition existed for a sufficient period of time that a merchant should have discovered the condition is a fact question; however, there remains the prerequisite showing of some time period. Jones v. Brookshire Grocery Co., supra; Kennedy v. Wal-Mart Stores, Inc., supra.
As noted by the appellant, none of the witnesses testified that they saw any foreign substance on the floor where Ms. Bell fell except for the ice that Ms. Bell spilled from her cup during the fall. Ms. Bell testified that "it had to be some water. It had to be a puddle of water somewhere." She finally agreed with a question from her attorney that it was water that caused her to slip. However, nowhere in her testimony is there a description of the water that could lead to a finding that the water had been on the floor for any period of time. She did not testify about the size, shape or discoloration of the puddle she claimed may have caused her to slip. The photos of the area show what may or may not be old water stains near the area where Ms. Bell slipped. Ms. Bell did not say that there was water on the floor at that location when she slipped. Although the plaintiff's counsel cites in brief a large variety of *413 sources from which water or some other liquid could have spilled onto the floor, there is no evidence that any liquid actually was on the floor in the area for any length of time prior to Ms. Bell's fall. In the absence of such evidence, the trial court was manifestly erroneous in finding that the plaintiff met her burden of proof under La. R.S. 9:2800.6.

CONCLUSION
The judgment of the trial court is hereby reversed and judgment is rendered in favor of American General Investment, L.L.C., dismissing Ms. Bell's claims. Costs are assessed to Ms. Bell.
REVERSED AND RENDERED.