CARAWAY, J.
_|jln this case, the plaintiff was shopping at a grocery store when she tripped and fell on a small box in the aisle. The store management had begun its restocking procedures two hours before it closed for the evening, and the box had been left on the floor for the restocking of a product. Following a bench trial, the trial court found no fault on the part of the defendant. Our review of the record shows that the box in question presented an unreasonable risk of harm, and we therefore reverse the ruling of the trial court.

Facts

In the evening of January 3, 2010, Donna Guerrero (the “Plaintiff’) tripped and fell over a box left in the aisle of Super 1 Foods in West Monroe. A Super 1 Foods manager for defendant, Brookshire Grocery Company (“Brookshire”), placed a box on the floor of the aisle in anticipation of restocking the shelves. Plaintiff and her husband arrived at the grocery store at approximately 8:00 p.m. and walked down the center aisle of the store looking for coffee. They did not find the coffee on that aisle, and turned onto the next aisle. Photographs taken by the defendant well after the accident show the aisle where the coffee was sold. It is undisputed that the boxes were out in the aisle before the store closed at 10:00 p.m., since such restocking activity is a regular practice of Super 1 Foods. Plaintiff testified that she was unaware of the box, and after looking for the coffee on the shelf, she tripped and fell over the box.
Plaintiff reported her injury to a cashier in the store, who in turn | ¡¡reported the accident to Jessie Harrison, the store’s on-duty manager. Harrison completed an incident report and allegedly used Plaintiffs husband’s phone to take a picture of the accident scene. Either later that night or the next day, Mr. Guerrero looked for the picture on his phone, but it was not there. Plaintiff insists that Harrison deleted the picture after taking it. Brookshire denies that this picture was ever taken. The accident report states that no pictures were taken. Plaintiff claims that Harrison took the picture and then went into his office to transfer it onto his computer. Plaintiff testified that the box she tripped over was the only box in the aisle, but this fact is disputed by Harrison. Harrison claimed that there were other boxes set out in anticipation of restocking. Photographs introduced by Brookshire at trial show a recreation of the accident scene with multiple boxes on the ground, “depicting the approximate location of boxes as they were spotted on the evening of the accident.”
At trial, Harrison testified on direct examination that the photographs accurately depicted the aisle at the time of the accident. The photographs show at least six boxes in the aisle, with some stacked at different places along the aisle to over two feet high. However, on cross-examination, Harrison testified that he did not have specific recollection as to how many boxes were on the aislé on the night of the accident, and, in fact, admitted that his previous testimony from his deposition was more accurate. In his deposition, Harrison testified that he specifically remembered only the box Plaintiff tripped over being in the aisle, and possibly one other box. The disputed photographs do not reflect this and clearly show several boxes in | ¡¡the aisle. Harrison also admitted that there were no warnings issued in the store, or signs posted informing customers that stocking was underway. He admitted that the only way for customers to know that shelving was occurring was by observing the boxes on the floor.
Plaintiffs husband testified that the box was the height of a coffee can. He remembered this because coffee cans in the *1096 box fit snugly. Harrison testified that he believed the box was full of coffee filters, and not coffee cans, and that the box was “tall and slender.” Harrison did not see the accident, but he recalls that when Plaintiff showed him where the accident happened, “she showed [Harrison] the coffee filter box.” Thus, from the trial evidence as a whole, including Brookshire’s disputed representation of the aisle by its recreation of the scene, it is apparent that the box in question was rectangular in shape and around 10 inches or less in height.
After the accident, Harrison reviewed the security tapes from inside the store, where over 20 cameras were present. Harrison testified that none of the cameras focused on the location where the fall occurred, so there was no video evidence of the accident. Harrison deleted the video recordings, insisting that there was nothing to preserve.
Plaintiff went for treatment at the Orthopedic Center of Monroe, where doctors diagnosed her with a Tl-2 herniated disc as a direct result of the fall. Plaintiff claims to continue to suffer pain daily, and that she will ultimately need surgery if the injury continues to worsen.
At trial, the court ruled that Plaintiff had not carried the burden of La. R.S. 9:2800.6 for merchant liability. On appeal, Plaintiff argues that the trial committed reversible error in admitting photographs of the accident scene introduced by Brook-shire, in finding that Plaintiff did not satisfy the requirements |4of 9:2800.6, and in not applying the doctrine of spoliation of photographic and video evidence the Defendant failed to preserve.

Discussion

The imposition of tort liability on a merchant for a patron’s injuries resulting from an accident is governed by La. R.S. 9:2800.6, which provides, in part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
A person who brings a claim for an injury sustained in an accident due to a condition existing on the merchant’s premises must prove that: (1) the condition presented an unreasonable risk of harm that was reasonably foreseeable; (2) the merchant either created or had actual or constructive notice of the dangerous condition; and (3) the merchant failed to exercise reasonable care. La. R.S. 9:2800.6(B).
Merchants are required to exercise reasonable care to protect those | Rwho enter the store, keep the premises safe *1097 from unreasonable risks of harm and warn persons of known dangers. Jones v. Brookshire Grocery Co., 37,117 (La.App.2d Cir.5/14/03), 847 So.2d 43; Turner v. Brookshire Grocery Co., 34,562 (La.App.2d Cir.4/4/01), 785 So.2d 161; Ward v. ITT Specialty Risk Serv., Inc., 31,990 (La.App.2d Cir.6/16/99), 739 So.2d 251, writ denied, 99-2690 (La.11/24/99), 750 So.2d 987. The mere presence of a defect does not alone elevate that defect to the level of an unreasonably dangerous condition. Milton v. E & M Oil Co., 45,528 (La. App.2d Cir.9/22/10), 47 So.3d 1091.
In the present case, the only element in dispute is whether the box in the aisle presented an unreasonable risk of harm. The determination of whether a defect presents an unreasonable risk of harm involves factual findings which differ in each case. Crisler v. Paige One, Inc., 42,563 (La.App.2d Cir.1/9/08), 974 So.2d 125. Thus, there is no fixed or mechanical rule for determining whether a defect presents an unreasonable risk of harm. Lawrence v. City of Shreveport, 41,825 (La.App 2d Cir. 1/31/07), 948 So.2d 1179, writ denied, 07-0441 (La.4/20/07), 954 So.2d 166; Buchignani v. Lafayette Ins. Co., 41,384 (La.App.2d Cir.8/23/06), 938 So.2d 1198; Reitzell v. Pecanland Mall Assoc., Ltd., 37,524 (La.App.2d Cir.8/20/03), 852 So.2d 1229.
The facts of this case are similar to those of two recent cases decided by this court, Russell v. Morgan’s Bestway of La., L.L.C., 47,914 (La.App.2d Cir.4/10/13), 113 So.3d 448, and Primrose v. Wal-Mart Stores, Inc., 48,370 (La.App.2d Cir.10/2/13), 127 So.3d 13. Both cases involved store | r,patrons tripping over items in the control of the store merchant and injuring themselves. In Russell, a customer tripped and fell over one of several carts left along the aisle of a grocery store. The trial court awarded summary judgment in favor of the store operator, and the customer appealed. This court held that a stocking cart in an aisle was obvious, and there was sufficient room for customers to walk around it and still easily navigate the aisle. The cart was visible to the plaintiff and it was “open and obvious” in nature.
In Primrose, another summary judgment awarded to a store operator-defendant, a customer tripped and fell over a corner of a produce display while returning her shopping cart. This court affirmed the decision of the trial court, holding that the display was not unreasonably dangerous. This court reasoned that because the display was relatively high and it has been used for at least four years, the likelihood of injury was slight. There were also “Watch Step” signs at each corner of the display.
Additionally, in a case decided by the Louisiana Supreme Court, a plaintiff brought action against a store after falling in a parking lot over a shopping cart. Rodriguez v. Dolgencorp, LLC, 14-1725 (La.11/14/14), 152 So.3d 871. In the per curiam opinion, the court reversed the district court’s denial of the defendant store’s motion for summary judgment. Citing this court’s Russell decision, the Supreme Court held that the shopping cart in the store’s parking lot was open and obvious. Id. at 872. The plaintiff was aware of the presence of the shopping cart, and it could have been avoided through the exercise of ordinary care.
JiL
The one fact that is beyond any dispute is that the Plaintiff tripped on the box of coffee filters which was a relatively small box placed with one end of the rectangular box against the shelf. Her trip occurred as she was focused on a product high on the shelf and moving to reach for it. This store-created condition, therefore, can readily be distinguished from the shopping carts and produce display which *1098 did not result in liability to the store owners in the Rodriguez, Russell and Primrose rulings. The height of the box, which was approximately 10 inches or less, made this obstacle much less apparent to the shopper.
The provisions in the merchant statute address, among other incidents, a shopper’s “fall” because of “floor” conditions “created” by the merchant. La. R.S. 9:2800.6. An unexpected trip hazard low to the floor in the shopping area along an aisle is therefore within the statute’s scope and may result in merchant fault if the hazard presents an unreasonable risk of harm.
In determining whether a condition is unreasonably dangerous, courts have adopted a four-part test. This test requires consideration of:
1) the utility of the complained-of condition
2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition
3) the cost of preventing the harm and
4) the nature of the plaintiffs activities in terms of its social utility, or whether it is dangerous by nature
Russell, supra at 452. Simply put, the trier of fact must decide whether the Issocial value and utility of the hazard outweigh, and thus justify, its potential harm to others. Russell, supra; Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362; Entrevia v. Hood, 427 So.2d 1146 (La.1983); Dowdy v. City of Monroe, 46,693 (La.App.2d Cir.11/2/11), 78 So.3d 791. The trier of fact determines whether a defect presents an unreasonable risk of harm and that determination is reviewed under the manifest error standard. Bu-chignani, supra. The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong or manifestly erroneous. Hughes v. Scottsdale Ins. Co., 35,043 (La.App.2d Cir.8/22/01), 793 So.2d 537.
As we discussed in Russell, the necessity for stocking merchandise is ongoing in the merchant’s store, and the stocking procedure can be properly made visible during the store hours through the use of carts or other methods to make customers aware of that activity. Thus, the utility of the stocking procedure is important. Nevertheless, the likelihood and magnitude of harm to a customer becomes great when a box in the store is less obvious and apparent. This is because the customer’s shopping activity which is focused on the merchandise by the in-store advertisement associated with the various shelved products distracts the customer’s vision. The cost of preventing the harm as addressed in Russell can be viewed as inconsequential to the store to the extent that carts or other obvious modes of delivering new merchandise to the aisles are used by the merchant.
From our review of the facts of this accident, we find that the small box in question presented an unreasonable risk of harm. We make this | fldetermination even with the presence of some other boxes in the aisle, a fact which is left in considerable doubt by the record. Other boxes did not negate the fact that the Plaintiff, distracted in her search for a product high on a shelf, momentarily lost track of the location of the small box at her feet and tripped. The obstacle was not open and obvious in this case. The trial court’s conclusion to the contrary is manifestly in error and clearly wrong.
II.
The next issue for consideration concerns the allocation of fault pursuant to Civil Code Article 2323.[1] The Louisiana *1099 Supreme Court has held that when an appellate court finds that a lower court was clearly wrong in apportioning fault, “it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion.” Toston v. Pardon, 03-1747 (La.4/28/04), 874 So.2d 791, citing Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607. This principle was applied in Toston even where the finder-of-fact had found no fault on one of two actors who were ultimately found at fault for the accident.
The factors in Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985), are applicable for the assignment of fault between the parties. The trier of fact is to consider the nature of the conduct of each 110party at fault and the extent of the causal relation between the conduct and the damage claimed. The factors to consider include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Id. at 974.
The merchant’s duty under the statute not to create trip hazards for customers means that Brookshire was aware that its actions in the placement of the small box for stocking created a danger. The Plaintiffs contributing fault, on the other hand, resulted from inadvertence in her shopping. Brookshire was in the superior position of avoiding this accident altogether with the implementation of a better stocking procedure to give a clearly visible notice to the customers.
While we find that the allocation of most fault in this case must be placed on Brook-shire for this accident, the Toston ruling requires us to raise the fault of Brookshire to the lowest amount that can be attributable to its actions. Accordingly, we allocate 60% of the fault to Brookshire and 40% to the Plaintiff.
III.
Plaintiff seeks medical costs, damages for pain and suffering, loss of |nenjoyment of life, and employment opportunities totaling $40,000. Plaintiffs damages were shown by medical testimony. Dr. Douglas Brown, an orthopedic surgeon, concluded that Plaintiffs disc injury was the direct result of her trip and fall at Super 1. Plaintiff has been unable to afford continued medical care and has self-treated with over-the-counter medication, including Advil and other types of pain relief medication. She completed physical therapy but continues to suffer from discomfort and has difficulty sleeping through the night without waking from back pain. She *1100 also has difficulty completing daily tasks such as driving and walking without experiencing pain in her back.
Dr. Brown reported in Plaintiffs medical records that three months after the injury, her degenerative disc showed definite improvement, and he encouraged her to see her primary care doctor in the future. Nevertheless, 10 days later, on April 20, 2010, Dr. Brown saw Plaintiff again, noting that she had not undergone any physical therapy. He prescribed medicine for headaches and instructed her to complete a 6-week physical therapy program. On May 21, 2010, Dr. Brown noted that she had been going to physical therapy and that she was not a candidate for surgery. He also opined that there was a 40% chance that over a 20-year period, the injury may worsen making surgery necessary. He released her to normal activity, and no return visit was scheduled. Medical bills at Dr. Brown’s office totaled $1,638.
Plaintiff underwent a medical examination on April 19, 2011, at the chiropractic offices of Dr. Dan Holt. Results showed that she had an | ^inhibited range of motion in her neck and back and that the range of motion tests resulted in pain. Medical bills at Dr. Holt’s office totaled $1,677.43.
General damages are those which cannot be fixed with pecuniary exactitude. Lewis v. State Farm Ins. Co., 41,527 (La.App.2d Cir.12/27/06), 946 So.2d 708; Maranto v. Goodyear Tire & Rubber Co., 25,114 (La.App.2d Cir.5/10/95), 661 So.2d 503. There is no mechanical rule for determining general damages; rather, the facts and circumstances of each case must be considered. Maranto, supra. The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. Jenkins v. State ex rel. Dept. of Transp. & Dev., 06-1804 (La.App. 1st Cir.8/19/08), 993 So.2d 749, 767, writ denied, 08-2471 (La.12/19/08), 996 So.2d 1133; Lewis, supra.
From the testimony of Dr. Brown, despite some lingering pain issues with the Plaintiff, we find that Plaintiff has recovered significantly from her injury. We award general damages in the amount of $25,000 for Plaintiffs injury. The special damages for medical expenses shall be awarded in the amount of $3,315.43.

Conclusion

For the above reasons, the judgment of the trial court is reversed. Fault for the accident is assessed 60% to Brookshire and 40% to Plaintiff. Judgment is hereby rendered in the amount of $28,315.43 for general damages and special damages, plus legal interest. Costs of appeal are assessed to appellee.
REVERSED.

. La. C.C. art. 2323 provides, in pertinent part:
*1099 (A) In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall ■ be determined, regardless of whether the person is a party to the action or a non-party, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.