DREW, J.
|! Plaintiff, Ava Williams-Ball (“Ms. Ball”), sought damages for injuries sustained when she slipped and fell on a clear “egg like” substance in a Brookshire Grocery Company store (“Brookshire”) in Shreveport, Louisiana.
The trial court found in favor of the defendant, rejecting Ms. Ball’s claims. The court held that she failed to meet her burden of proof under La. R.S. 9:2800.6.
Ms. Ball appealed, contending that the trial court erred in failing to find that the employees of the store caused the dangerous condition which resulted in her fall or had actual or constructive notice of the dangerous condition. She also contended that the trial court committed reversible error in allowing inadmissible impeachment testimony into evidence:
• a deposition of another client of plaintiffs attorney; and
• her prior medical records.
*197 The judgment of the trial court is affirmed in all respects.
FACTS
In the early afternoon of November 4, 2012, Ms. Ball was shopping at Brookshire on Jewella Avenue in Shreveport. At approximately 12:46 p.m., as she was walking on the dairy aisle in the back of the store, Ms. Ball left her buggy to pick up some hash browns. As she began walking back to her buggy, she slipped and fell, landing on her left knee. The fall occurred just in front of the refrigerated shelves containing cartons of eggs. According to Ms. Ball’s trial testimony, she slipped' and fell on a “clear liquid” that “looked like an egg.” She did not see the substance before the fall.
| gMultiple customers witnessed the fall. One of them alerted an employee, who then came over to check on Ms. Ball; that employee went to alert the manager, Jimmy Digilormo, who came to assist Ms. Ball. He took a statement from her, filled out an accident report, and took pictures of the substance on the floor, noting in his report that Ms. Ball complained of pain in her left knee, left ankle, and left toe.
After refusing an ambulance, Ms. Ball called her son to pick her up. He took her to Willis-Knighton North Hospital in Shreveport, where she reported that she had been injured in a fall. She complained of pain in her right trapezius, right scapula, and thoracic area (shoulder and back). An X-ray revealed- a normal right shoulder, and Ms. Ball was diagnosed with back strains and a right shoulder contusion. She was prescribed Lortab and released to home/self-care. .Over the coming months, Ms. Ball received treatment in the form of pain medication, muscle relaxers, and physical therapy for her injuries.
On October 25, 2013, Ms. Ball filed suit. In rejecting her claims, the trial court held that Ms. Ball had failed to carry her burden under La. R.S. 9:2800.6 to.prove that the merchant had actual or constructive notice of the condition. Along with testimony from the plaintiff, eyewitnesses and store employees, the trial court relied heavily on the surveillance video, as have we.
As to whether the merchant created the condition which caused the damage, the trial court stated that while the surveillance video does show a Brookshire employee, Mr. Anderson, stocking eggs in the area where the incident occurred 45 minutes later, nothing shows that Anderson caused the hspill. In addition, the video shows that multiple people walked through that area during that 45-minute period with no problems.
As to whether the merchant had actual notice of the condition which caused the damage, the trial court stated that there was simply no evidence that anyone saw or reported the foreign substance prior to the fall.
The trial court found no evidence that the merchant had constructive notice of the dangerous condition. All testimony was that the liquid substance was fresh; Ms. Ball herself testified that it looked as if it had only been there for a few minutes because it was still “wet-wet.”
In addition, the video showed that multiple people walked directly over and adjacent to the location, just before the fall, without incident. 1 In. particular, a lady dressed in pink can be seen in the video just seven minutes prior to Ms. Ball’s fall, walking directly over the area of the fall.
The trial court Concluded that since Ms. Ball presented no positive evidence that the substance had been on the floor for any period of time prior to her fall, she failed -to establish a necessary element of her‘case.
*198 LAW
The applicable law, La. R.S. 9:2800.6, entitled “Burden of Proof in Claims Against Merchants,” provides, in pertinent part: • •
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
j4(l) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence. ■
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition,
(2) “Merchant” means one whose business is to sell -goods, foods, wares, or merchandise ata fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, includiñg but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
In the case of White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, the Louisiana Supreme Court stated that, in addition to all other elements of the cause of action, a plaintiff seeking recovery under R.S. 9:2800.6 must prove each of the three enumerated requirements of Subsection (B) of the statute. White, supra.
Subsection (B)(2) of the statute requires that a plaintiff prove that the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence. As defined by Subsection (C)(1), “constructive notice” means that the condition existed for such a |speriod of time that it would have been discovered if the merchant had exercised reasonable care. La. R.S. 9:2800.6; White, supra.
The White court held that to prove constructive notice, a plaintiff must make a positive showing of the existence of the damage-causing condition for some time period prior to the fall: A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be *199 specific in minutes or hours,--constructive notice requires that the claimant prove the condition existed for some time period pri- or to the fall. White, supra.
DISCUSSION

Plaintiffs Failure to Meet the Burden of Proof

A trial court’s findings regarding, liability, for damages caused by a slip and fall accident at the defendant’s place of business are factual determinations that will not be disturbed absent manifest error or unless clearly wrong. Jones v. Brookshire Grocery Co., 37,117 (La.App.2d Cir.5/14/03), 847 So.2d 43. In Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC, 2014-2592 (La.12/8/15), 193 So.3d 1110 the Supreme Court discussed manifest error review:
In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. Rather, in reversing a trial court’s factual conclusions with regard to causation, the appellate court must satisfy a two-step process based on the record as a whole: there |flmust be no reasonable factual basis for the trial court’s conclusion, and the finding must be clearly wrong.
This "test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court’s findings. The court must review the entire record to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. The issue to be resolved on review is not whether the judge , or jury was right or wrong, but whether the judge’s or jury’s factfinding conclusion was a reasonable one.
Id. at 4-5 (Citations omitted).
The Louisiana Legislature has created in R.S. 9:2800.6 a heavy burden of proof for plaintiffs who slip and fall in merchant’s premises. Failure to prove any of the three required elements in R.S. 9:2800.6(B) is fatal to the plaintiffs case. Rowell v. Hollywood Casino Shreveport, 43,306 (La.App.2d Cir.9/24/08), 996 So.2d 476.
The trial court was not clearly wrong in finding that Ms. Ball failed to prove that the Brookshire employee created the damage-causing condition. The best evidence of who might have created the condition is the surveillance video, which captures the location of Ms. Ball’s fall prior, to, during, and after the incident. The video shows a store employee, Anderson, stocking eggs in the general location of the fall about 45 minutes prior to the incident. However, the video does not show Anderson spilling anything on the ground, dropping a carton of eggs, etc. It shows him setting a box down in the area of the fall and dropping a piece of cardboard a few feet away; however,-the substance itself is not visible on the floor at any time during the video, so this video does not establish when the substance ended up on the floor. In addition, there is no evidence that anyone saw the substance prior to the time of the incident. Thus, there is no testimony to trace the existence |7of substance on the floor back to the time of Anderson’s stocking. To say that Anderson created' the condition is mere speculation.
The trial court was not clearly wrong in finding that Ms. Ball failed -to prove that the Brookshire employee had *200 actual notice of the damage-causing condition.. As the court stated, there was simply no evidence that anyone saw the substance on the floor prior to the incident or reported it to the merchant to put Brook-shire on actual notice of the damage-causing condition.
Because the evidence failed to establish that Brookshire employees created the hazardous condition or had actual notice of it, it was .necessary for Ms. Ball to prove constructive notice as defined in R.S. 9:2800.6(0(1). The trial court. was not clearly wrong in finding that Ms. Ball failed to do so. The law requires that Ms. Ball make a positive showing that the damage-causing condition existed for “some time” prior to the incident. White, supra. The evidence presented simply does not show how or when the substance ended up on the floor. As a matter of fact, the only time the substance was definitely on the floor was immediately after Ms. Ball’s fall, when the witnesses, including the store manager and bystanders,' saw the clear substance on the floor. While that establishes the damage-causing condition did, in fact, exist, that alone is insufficient.
.The substance itself is never visible on the surveillance video, and no testimony places the substance on the floor at any point prior to Ms. Ball’s fall. In addition, the video shows that after Anderson finished stocking the eggs in the general area of the fall, . approximately 45 minutes passed before Ms. Ball’s incident occurs. During those 45 minutes, over 15 people, including several with shopping carts, traversed directly over or adjacent to |8the fall location. Not one of these people ■ stopped to look at anything on the floor, slipped, or appeared to have any trouble navigating the area. According to the store manager, if the liquid substance had been on the floor during this time, this much foot and shopping cart traffic would have made the substance appear dirty. In addition, track marks from buggies and feet would have appeared in the substance. However, testimony by the witnesses confirmed that the substance appeared “fresh.”
Two witnesses corroborated Ms. Ball’s assessment of the liquid:
(1) Ms. Necole Major testified that she did not remember the substance being dirty or having any track marks through it.
(2) Mr. Digilormo testified the substance was a “good clean liquid” with no track marks.
In addition, the photographs taken of the area, post-fall, appear clean.
The evidence supports the conclusion of the trial court.

Admission of Changes to Deposition

In her second assignment of error, Ms.. Ball argues that the trial court committed reversible error by allowing a deposition of another client of her attorney to be admitted into evidence for purposes of her impeachment. The trial court is granted broad discretion in making eviden-tiary rulings, which is not to be disturbed absent clear abuse.
Ms. Ball made changes to portions of her deposition in which she described the substance on the floor after her fall. The reason she gave for those changes was that she was “very nervous and tense.” Brookshire’s attorney introduced changes to a deposition from another client of Ms. Ball’s attorney, in a different case, which gave the exact same reason. The trial court allowed these changes from the other client to be admitted into evidence.
lain her argument that this was reversible error, Ms. Ball relies on Crawford v. Brookshire Grocery Co., 50,151 (La.App.2d Cir.9/30/15), 180 So.3d 478. In Crawford, *201 the trial court granted a defendant’s motion to strike changes to a deposition because the plaintiffs changes seemed suspicious in light of a prior motion by the defense for summary judgment. The stricken changes resulted in summary judgment for the defendant. This court reversed in part, holding that the plaintiff has the legal right to make changes to his or her deposition regardless of their “smell.”
Notably, the instant case was a trial on the merits, not a motion for summary judgment. The trial court had broad discretion to consider any evidence bearing on Ms. Ball’s credibility. La. C.E. arts. 401, 402. The trial court was entitled to consider whether Ms. Ball’s changes were genuine. The trial court’s ruling is not an abuse of discretion.

Admission of Prior Medical Records

In her third assignment of error, Ms. Ball argues that the trial court committed reversible error by allowing the admission of her prior medical records into evidence for the purpose of her impeachment.
Ms. Ball argues that a plaintiffs prior medical history cannot be used for the purpose of impeachment, citing a criminal case, State v. Davis, 562 So.2d 1173 (La.App. 4th Cir.1990).
In the instant case, however, the medical records were introduced as to whether Ms. Ball’s current complaints were caused by her fall in the store, or pre-existed it. This is moot, in any event, as we agree with the trial court that Brookshire is' not responsible for Ms. Ball’s accident or her related injuries.
ImHaving found the trial court correctly determined that plaintiff did not sustain her burden of proof required to recover, these evidentiary complaints are moot.
DECREE
For the foregoing reasons, at plaintiffs cost, the judgment is AFFIRMED. ■