CARAWAY, J.
liThe trial court granted the defendant’s motion for summary judgment in this trip and fall case. In this case, the plaintiff tripped over one of several stocking carts left along an aisle of the defendant’s grocery store. The plaintiff walked between two carts to retrieve a grocery item from the display case, but turned around and tripped on one of the carts. Video footage from a store camera recorded the accident. The trial court found that the carts were open and obvious and the plaintiff was aware of their location. For the following reasons, we affirm.

*450
Facts

On Friday November 5, 2010, Kim Russell (“Russell”) and her husband were grocery shopping at Morgan’s Bestway of Louisiana, L.L.C. (“Bestway”), in Tallulah, Louisiana. Russell testified that she needed only one item. They entered the aisle wheré the dairy case is located at 9:47 a.m. in order to find-cream cheese. Russell claimed that she noticed several stocking carts alongside the refrigerated display of the products, but she thought that there was enough room between the carts for her to get her product. Russell stated:
I didn’t have to reach over them [the stocking carts] because ... they were probably about to my waist, you know. And there was an open hole there and I reached and grabbed the cream cheese, and I don’t know what happened then.
While she does not remember falling, Russell believed that the cause of her fall “had to be the cart.” Her petition alleges that she suffered several injuries as a result of the fall, including a herniated disc, bruises, and contusions. Black and white still photographs depicting the accident were |2taken from Bestway’s security camera’s recorded footage. These photographs are not very clear and depict only a portion of the aisle. Russell’s feet, the lower half of the stocking cart, and the stocking.cart on the other side of Russell are not visible.
Calvin Watkins (“Watkins”) was Best-way’s assistant manager and the manager on duty when Russell fell. In his deposition, Watkins stated that every Tuesday and Friday around 6:00 a.m., a truck delivers shipments of groceries to Bestway. As a result, several stocking carts, are removed from the storage area in the back of the store to free up space in order to operate the forklift and unload the,pallets of groceries from the truck. Watkins stated that it takes about 45 minutes to unload the truck. Since the stocking carts were almost always returned to the back of the store before the store opened at 7:00 a.m., Watkins testified that the store did not have a written policy or procedure in place regarding the stocking carts. When questioned about alternative placement options for the stocking carts in the aisles, Watkins stated:
[W]e could’ve probably rolled the carts on the outside. But with the way the wheels and stuff on the carts, the way the foundation is out there, you know, raggedy and riggidy (sic), you know, so we could have put them outside probably.
Regarding the day of the accident, Watkins stated that the truck driver called on that morning in order to let Watkins know that he was running behind schedule. As a result, the stocking carts remained on the dairy case aisle when the store opened.
In his deposition, Watkins stated that he was walking down Aisle 8 when he heard the accident. He stated that he “saw her on the floor” as “her ^husband was trying to help her up because she seemed like she was in kind of pain because she had tripped over the cart accidently.” As they were leaving, Russell’s husband told him that they were going to the hospital.
Russell filed her petition for damages on July 22, 2011. Thereafter, Bestway filed a motion for summary judgment on January 4, 2012. Bestway argued that Russell could not satisfy the unreasonable risk of harm element of the Merchant Liability Statute, La. R.S. 9:2800.6, because she admitted to seeing the stocking carts before she fell.
At the May 16, 2012 hearing on the motion, the trial court granted the defendant’s summary judgment and dismissed the plaintiffs case. Referencing the three- *451 prong test of the Merchant’s Liability Statute, the trial court stated that:
I examined the photographs that were attached to your exhibit and there was plenty of room between those carts for anybody to make their selection from the dairy case. She was aware of those carts. They were open and obvious and she failed to meet the condition of number one in that statute ... She also would fail to meet condition number three, that is that the merchant failed to exercise reasonable care ... the reason that those carts were present there that day, that it was just a matter of — that it satisfies the requirement of utility, because that was the only place they could be while the groceries were being loaded into the stocking area.
The plaintiff appeals the dismissal of her claim.

Discussion

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. La. C.C. art. 966 A(2). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to | interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C. art. 966 B(2). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C. art. 966 C(2).
We review the grant of a motion for summary judgment de novo. Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La.1991); Dowdy v. City of Monroe, 46,693 (La.App.2d Cir.11/2/11), 78 So.3d 791. A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. King v. Illinois Nat. Ins. Co., 08-1491 (La.4/3/09), 9 So.3d 780; Dowdy, supra at 794.
lsThe Louisiana Merchant Liability Statute, La. R.S. 9:2800.6, provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of this cause of action, all of the following:
*452 1. The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
2. The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
3. The merchant failed to exercise reasonable care. In determining care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone to prove failure to exercise reasonable care.
C. Definitions:
1. “Constructive notice” means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
Failure to prove any of the requirements enumerated in La. R.S. 9:2800.6 will prove fatal to the plaintiffs case. Harrison v. Horseshoe Entertainment, 36,294 (La.App.2d Cir. 8/14/02), 823 So.2d 1124; Richardson v. Louisiana-1 Gaming, 10-262 (La.App.5th Cir.12/14/10), 55 So.3d 893. Merchants are required to exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risks of harm and warn persons of known dangers. Jones v. Brookshire Grocery Co., 37,117 (La.App.2d Cir.5/14/03), 847 So.2d 43; Turner v. Brookshire Grocery Co., 34,562 (La.App.2d Cir.4/4/01), 785 So.2d 161; Ward v. ITT 16Specialty Risk Services, Inc., 31,990 (La. App.2d Cir.6/16/99), 739 So.2d 251, unit denied, 99-2690 (La.11/24/99), 750 So.2d 987. The mere presence of a defect does not alone elevate that defect to the level of an unreasonably dangerous condition. Milton v. E & M Oil Co., 45,528 (La. App.2d Cir.9/22/10), 47 So.3d 1091, 1095.
It is not disputed that Bestway created this condition by placing the stocking carts down the dairy aisle, thereby satisfying the second element. The trial court held that the plaintiff failed to prove the first and third elements.
In determining whether a condition is unreasonably dangerous, courts have adopted a four-part test. This test requires consideration of:
1) the utility of the complained-of condition
2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition
3) the cost of preventing the harm and
4) the nature of the plaintiffs activities in terms of its social utility, or whether it is dangerous by nature
Dowdy, supra at 795. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify its potential harm to others. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362; Entrevia v. Hood, 427 So.2d 1146 (La.1986); Dowdy, supra.
In Dowdy, supra, in the context of a motion for summary judgment, this court decided the issue of whether an unreasonable risk of harm was present stating that “[t]he court is charged legislatively by this favored procedure to determine the legal significance of the undisputed facts.” Id. at 797-798.
|7As shown by the photos of the accident scene, each of the stocking carts lined up along the dairy case section of the store is approximately four to five feet in length. The metal platform where merchandise is stacked for transporting appears to be approximately eight inches off the floor and supported by the four small wheels of the cart. At one end of the stocking cart is a tall metal stand, perpendicular to its plat *453 form with an extended bar for pushing the cart. Clearly, a single cart empty of any merchandise and located along a store aisle would be an obstacle that would be obvious to a shopper. Unless such cart was located in a place where the shopper might unexpectedly encounter it and trip, one obvious stocking cart does not present an unreasonable risk of harm. Its utility for stocking merchandise is a necessity, and its common use and obviousness to a shopper make any risk slight.
The alleged hazard in this case, however, goes beyond the risk associated with one stocking cart. There were two carts side-by-side and Russell stepped between those carts to access the dairy case. That area between the carts was estimated at between three and four feet, which was a somewhat narrow area in which to maneuver. Turning to leave that area with her cream cheese product in hand, Russell tripped on a cart.
The utility of the complained-of condition relates to Bestway’s need to have the stocking carts on the aisles of the store from time to time when store customers are present. The utility and need may be diminished somewhat in this ease as the situation arose from an unusual event involving the late arrival of the delivery truck. The “cost of preventing harm” can also labe viewed as basically inconsequential to the store as the carts could have been placed in a different manner by Best-way around the store or even outside the building.
An assessment of the likelihood and magnitude of harm involving the obstruction caused by these multiple stocking carts shows that harm to customers would be unlikely. The carts are clearly large and obvious. A customer might be inconvenienced by the cart placement and might need a cart to be moved to obtain a grocery item. However, Russell did not testify that she was blocked from reaching the cream cheese. After selecting her item, she simply tripped on the stocking cart as she turned to leave the dairy case. The time indicator from the still frames of the videotape of the accident shows that her maneuver in between the two carts occurred in a matter of seconds, and she tripped inadvertently on one of the carts.
Finally, the nature of plaintiffs activity was that of a normal shopper. She did not do anything risky in choosing to walk into the space between the carts.
From this review, we find that the facts are undisputed as revealed by the actual event shown on the still frames from the videotape. Even though there were multiple stocking carts involved, we find this situation so open and obvious that Russell was able to observe the carts and easily avoid any risk of harm. Generally, there are different display arrangements and other observable obstacles in the aisles of a grocery store. While a shopper might trip on such obstacles, including this arrangement of multiple carts, we do not find that this situation presents an unreasonable risk of harm making the |9store responsible in this instance. Accordingly, we affirm the trial court’s grant of summary judgment.

Conclusion

For the foregoing reasons, the trial court’s grant of summary judgment is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.