Judgment rendered February 8, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,780-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ANNA L. PISTORIUS                                    Plaintiff-Appellant

versus

HIGBEE LOUISIANA, LLC, d/b/a                         Defendant-Appellee
DILLARD'S

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 613,599

Honorable Ramon Lafitte, Judge

* * * * *

BROUSSARD & NEWLEN FIRM LLC              Counsel for Appellant
By: Christopher D. Broussard

BLANCHARD, WALKER, O'QUIN               Counsel for Appellee
& ROBERTS
By: Timothy R. Wynn

* * * * *

Before PITMAN, COX, HUNTER, MARCOTTE,
and MOORE (*Ad Hoc*), JJ.

MARCOTTE, J., dissents.

**MOORE, J. (*Ad Hoc*)**

This is an appeal of a summary judgment granted in the First Judicial District Court, Caddo Parish, the Honorable Ramon Lafitte presiding. While walking intently down the main aisle in a department store on her way to the shoe section, the plaintiff, Anna Pistorius (hereinafter, "Ms. Pistorius"), tripped and fell over a large, low profile, flatbed cart parked on the right side of the aisle located alongside the front of a display counter. She sued the store owner, Higbee Louisiana, LLC, d/b/a Dillard's ("Dillard's), for damages arising from the injuries she sustained from the fall. Dillard's moved for summary judgment alleging that the flatbed cart in the aisle was an "open and obvious" condition, and therefore did not pose an unreasonable risk of harm to the plaintiff. After oral argument, the court rendered judgment for Dillard's and dismissed the petition.

This appeal followed. We reverse and remand to the trial court for further proceedings.

## FACTS

Ms. Pistorius was injured on New Year's Day, 2018, at a Dillard's department store in Shreveport when she tripped and fell over a stocking cart parked on the main aisle in the men's department. Although New Year's Day is typically a holiday, Dillard's has held an annual New Year's Day sale for many years that is quite popular in the Shreveport area, drawing large throngs of shoppers into the store for the one-day sale. Ms. Pistorius went to the store with her best friend, Jill Richardson. The pair arrived at the store around 10:30 a.m., entering the store through the men's department entrance.

The entrance main aisle in the men's department leads to a large octagonal-shaped junction in the store where the escalators are located and connects customers to the other main aisles on the ground floor that lead to other departments in the store.

Ms. Pistorius testified at her deposition that she was bound for the shoe department when she tripped and fell over a large, empty, flatbed stocking cart that was parked lengthways on the right side of the 10-foot wide aisle. The horizontal bed of the cart has a low profile with wheels beneath, the bed raised approximately 6 to 8 inches off the floor. One end of the cart has a waist-high handle in the shape of an upside-down "U," with three flat bars connecting the two vertical stems of the "U." From the photograph supplied, the bed of the cart appears to be made of wooden planks.

The visual evidence submitted by the parties include photographs of the cart near the location where the accident occurred; however, Ms. Pistorius disputes the direction the cart is facing in the photograph and the color of the handle. There are also several hours of video of the store scene prior to the sale as well as video footage of the actual accident from a location behind the counter where the cart was parked. The store scenes depict very crowded, chaotic scenes of masses of shoppers jostling for products on countertops, tables, hangers, and displays. The aisle in which the accident occurred is depicted as busy with customers walking intently toward the various destinations, but is far less crowded, and could be described as a fairly orderly procession. The location of the cart in the aisle is not visible in the video due to the display case blocking the camera view.

2

Ms. Pistorius and the other customers walking through the scene are visible from the waist up only.

As previously noted, the aisle on which Ms. Pistorius was walking opens into the junction area where customers must go to the right or the left or to the escalator. As Ms. Pistorius neared the end of the aisle, she turned momentarily to look behind her, turned back around, and immediately dropped from sight. Obviously, she tripped over the cart at that point. Ms. Richardson said that Ms. Pistorius tripped over the front corner of the flatbed cart. The flatbed cart is depicted in photos provided by Dillard's, but Ms. Pistorius contends these are not accurate because of the direction of the cart in the photo, the color of the handle, and other details.

Dillard's filed a motion for summary judgment alleging that there were no material facts in dispute, and the location and size of the flatbed cart were "open and obvious," and therefore, under the open and obvious doctrine, the flatbed cart did not pose an unreasonable risk of harm to the plaintiff. After the case was argued, the court rendered judgment as prayed for, giving the following reasons:

The only issue in this motion for summary judgment is whether or not there is a genuine issue of fact as to whether the object, a stocking cart over which plaintiff tripped and fell, was open and obvious. The court said that it had reviewed all the attachments, including the USB drive with a video (of the incident), and had reviewed the cases argued by the parties, namely, *Russell v. Morgan's Best Way of La., LLC*, 47,914 (La. App. 2 Cir. 4/10/13), 113 So. 3d 448, *Chatman v. Home Depot USA, Inc.*, 2009 WL 10697804 (W.D. La. 5/29/2009), *Standifer v. Circle K Stores, Inc.*, 2015 WL 2452428 (W.D. La. 5/21/15), and *Perrin v. Oschner Baptist Med. Ctr.,* 2019-0265

3

(La. App. 4 Cir. 8/7/19), 2019 WL 3719546, *writ denied*, 19-01557 (La. 11/25/19), 283 So. 3d 495. After review of those cases, the court concluded that *Russell* and *Chatman* were most relevant. The court read the following passages that he found controlling from those two cases:

From *Chatman*:

> In general, defendants may have no duty to protect against an open and obvious hazard. If the facts on a particular case show that the complained of conditions should be obvious to all, not just to the plaintiff, but to all, the condition may be— may not be unreasonably dangerous and the defendant may not owe a duty to the plaintiff.
>
> The degree to which a potential victim may observe a danger is one factor in the determination of whether the condition is unreasonably dangerous. A landowner is not liable for an injury that results from a condition that should have been observed by the individual and the exercise of reasonable care or was as obvious to a visitor as it was to a landowner. A pedestrian has a duty to see that which should have been seen and is bound to observe whether the pathway is clear.

From *Russell:*

> Clearly, a single cart empty of any merchandise and located along a store aisle would be an obstacle that would be obvious to a shopper unless such cart was located and placed where the shopper might unexpectedly encounter it and trip. One obvious stocking cart does not present an unreasonable risk of harm. Its utility for stocking merchandise is a necessity and its common use and obviousness to a shopper make any risk slight.

The court went on to conclude that the passage from *Russell* presented the same facts as in the instant case, and made the following ruling:

> [T]he cart was to the side of a main aisle and coming in the entranceway from the men's department of the Dillard's Department Store just before reaching the escalators. I do believe that this was an open and obvious situation as explained and described in the *Russell* case and the *Chatman* case, and that being the case, it was an open and obvious situation, and the motion for summary judgment is thus granted.

4

The trial then granted the motion, dismissing the petition with prejudice. Ms. Pistorius filed this appeal.

## DISCUSSION

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Art. 969. The procedure is favored and shall be construed to accomplish these ends. La. C.C. art. 966 A(2). The judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C. art. 966 A(3). The burden of proof rests with the mover. However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to a judgment as a matter of law. La. C.C. art. 966 D(1).

Summary judgments are reviewed on appeal de novo. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Black v Johnson*, 48,779 (La. App. 2 Cir. 4/09/14), 137 So. 3d 170, *writ denied*, 14-0993 (La. 9/12/14), 148 So. 3d 574. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable

5

persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *King v. Illinois Nat. Ins. Co.*, 08–1491 (La. 4/3/09), 9 So. 3d 780; *Russell*, *supra*.

The "open and obvious" defense to liability is most frequently raised in the context of merchant liability, which is governed by La. R.S. 9:2800.6, which provides, with emphasis added:

### R.S. 9:2800.6 **Burden of Proof in Claims Against Merchants**

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) *The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.*

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

*Entrevia v. Hood*, 427 So. 2d 1146 (La. 1983); *Russell, supra.*

The first element of R.S. 9:2800.6(B) requires the plaintiff to produce factual support sufficient to show a genuine issue of material fact that there was a condition that presented an unreasonable risk of harm and the risk of

6

harm was reasonably foreseeable. While merchants must exercise reasonable care to protect their patrons and keep their premises safe from unreasonable risks of harm, they are not insurers of their patrons' safety and are not liable every time an accident happens. *Ton v. Albertson's LLC,* 50,212 (La. App. 2 Cir. 11/18/15), 182 So. 3d 246, *writ denied*, 15-2320 (La. 2/15/16), 186 So. 3d 1169. A merchant generally does not have a duty to protect against an open and obvious hazard. *Cox v. Baker Distrib. Co., L.L.C.*, 51,587 (La. App. 2 Cir. 9/27/17), 244 So. 3d 681, *writ denied*, 17-1834 (La. 1/9/18), 231 So. 3d 649. In order for a hazard to be considered open and obvious, our jurisprudence has consistently stated the hazard should be one that is open and obvious to all, i.e., everyone who may potentially encounter it. *Sepulvado v. Travelers Ins. - Charter Oak Fire Ins. Co.*, 52,415 (La. App. 2 Cir. 11/8/18), 261 So. 3d 980.

An "unreasonable risk of harm" is present, so as to support the merchant's statutory liability for a customer's slip and fall, if the dangerous condition would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. *Bell o/b/o Cox v. Big Star of Tallulah, Inc.*, 54,032 (La. App. 2 Cir. 8/11/21), 326 So. 3d 364. The determination of the unreasonableness of a risk predominantly encompasses an abundance of factual findings, which differ greatly from case to case. *Lawrence v. City of Shreveport*, 41,825 (La. App. 2 Cir. 1/31/07), 948 So. 2d 1179, *writ denied*, 07-0441 (La. 4/20/07), 954 So. 2d 166. Whether a condition poses an unreasonable risk of harm that is foreseeable is a finding of fact. *Bell o/b/o Cox*, *supra*.

In this case, the trial court found the facts of *Russell* to be most similar or "exactly" the same as the instant case. In *Russell*, *supra*, the trip and fall

7

accident occurred in front of the dairy case in the grocery store, where the stocking carts were lined up along the dairy case section of the store. The plaintiff saw the carts, which she described as about waist high. She decided to get some cream cheese from the dairy case by walking in the 3- to 4-foot space between two of the carts. After getting the cream cheese, she turned around and then tripped inadvertently on one of the stocking carts.

Based on photos submitted on the motion for summary judgment, the *Russell* court described the carts as follows, with emphasis added:

> As shown by the photos of the accident scene, each of the stocking carts lined up along the dairy case section of the store is approximately four to five feet in length. The metal platform where merchandise is stacked for transporting appears to be approximately eight inches off the floor and supported by the four small wheels of the cart. At one end of the stocking cart is a tall metal stand, perpendicular to its platform with an extended bar for pushing the cart. Clearly, a single cart empty of any merchandise and located along a store aisle would be an obstacle that would be obvious to a shopper. *Unless such cart was located in a place where the shopper might unexpectedly encounter it and trip, one obvious stocking cart does not present an unreasonable risk of harm.* Its utility for stocking merchandise is a necessity, and its common use and obviousness to a shopper make any risk slight.

The trial court granted the motion for summary judgment, finding that the several stocking carts lined up against each other did not present an unreasonable risk of harm so as to make the store responsible for patron's trip and fall injuries under R.S. 9:2800.6. On appeal, the panel from this court determined that the facts in the case were undisputed because the actual event was shown on the still frames taken from the videotape of the incident. The panel found that the situation was so open and obvious that Russell was able to observe the carts and easily avoid any risk of harm.

Similarly, *Chatman v. Home Depot*, *supra*, also involved a flatbed cart. The facts showed that the plaintiff, Ms. Chatman, went to Home Depot

8

to purchase a palm tree. She asked an employee (a Mr. Johnson) to help her with the 50-lb. palm tree she had selected. Mr. Johnson left and returned with a flatbed cart, which he parked two paces behind Ms. Chatman, who was standing in front of the palm that she selected. As Mr. Johnson and another helper pulled the plant out to load it on the cart, Ms. Chatman backed up two steps to get out of the way and she tripped and fell over the cart. She was unaware that it was parked behind her.

Ms. Chatman alleged that Mr. Johnson created the tripping hazard by placing the dolly immediately behind her, and he negligently failed to warn her of the tripping hazard. When asked at her deposition, "Had you turned around and looked where you were going, would you have prevented the accident?" she said yes. The defendant then moved for summary judgment.

Ms. Chatman opposed the motion arguing that the Home Depot employee created the hazard, and he failed to warn her of the danger. She further argued that the "open and obvious" defense does not apply because she was not aware that an employee positioned the cart directly behind her.

The federal district court observed that, although there were issues of fact, those issues were not material so as to preclude summary judgment because there was no issue of fact as to whether the cart presented an unreasonably dangerous condition. The court stated that the degree to which a potential victim may observe a danger is one factor in the determination of whether the condition is unreasonably dangerous. Since Ms. Chatman admitted in her deposition that if she had looked behind her, she would have seen the cart, the court found that by Ms. Chatman's own admission, the cart was an open and obvious condition. It concluded that Ms. Chatman had a duty "to see that which should be seen and is bound to observe whether the

9

pathway is clear." Because she failed to do so, and because she admitted that if she had looked before walking backwards, she would have observed the cart and prevented the accident, the court found that summary judgment in favor of the defendants was warranted.

The questions in this case, then, are whether the cart parked on a main aisle during the New Year's Day sale was open and obvious to all, and whether Ms. Pistorius had "a duty to see that which should be seen and was bound to observe whether the pathway is clear." *Chatman*, *supra*. We note, however, that the facts and circumstances in *Russell* and *Chatman* are distinguishable from those in the instant case.

In *Russell*, *supra*, it was undisputed that the plaintiff clearly saw carts parked in front of the dairy case, but she decided to venture between two of them to get a product from the dairy case. After she obtained the item, she tripped on one of the carts as she turned to get out from between the carts. The *Russell* court distinguished its facts from such circumstances as where the "cart [is] located in a place where the shopper might unexpectedly encounter it and trip."

In *Chatman*, *supra*, the facts indicate Ms. Chatman did not look behind her, and she would have seen the cart had she done so. Instead, she continued looking forward while walking backwards. In the instant case, Ms. Pistorius was looking ahead, but she did not see the cart in front of her on the right side of the aisle before she looked backward momentarily to see if Ms. Richardson was still behind her. The difference is that it is second nature to look behind oneself *before backing up* whether on foot or driving a vehicle. On the other hand, while moving forward, it is common to

10

momentarily look around while *still moving forward* since one ordinarily can see what lies ahead for some distance.

We also note that shopping carts and stocking carts are a common sight in grocery stores, and their presence is not unexpected; when people shop in grocery stores or in department stores such as Home Depot, they generally obtain a shopping cart and they expect that they will have to maneuver around displays and other carts, even though most are shopping carts in grocery stores. This is to say that grocery shoppers and Home Depot shoppers are generally attuned to be on the lookout for such obstructions.

Recently, in *Grisby v. Jaasim II, LLC*, 54,646 (La. App. 2 Cir. 9/21/22), _So.3d_, 2022 WL 4360637, we reversed a summary judgment rendered in favor of the defendant liquor store ("Porter House"), where, after the plaintiff made his purchase and began moving backward toward the door while speaking to the store clerk, he tripped over a low profile display of beer cans located on a pallet in the middle of the store. The customer filed a petition for damages for injuries that he sustained from the fall.

Porter House moved for summary judgment arguing that it was not liable under R.S. 9:2800.6 because the pallet was open and obvious, and thus not unreasonably dangerous. The trial court granted summary judgment, and dismissed Grisby's claim with prejudice.

Grisby appealed, arguing that the issue of whether the "ankle-high obstruction" present in the store was unreasonably dangerous is a question of fact that precluded summary judgment. The pallet was located in the center of the small store, allowing for very little room to maneuver around it. Additionally, the height of the pallet was very low and a consideration with regard to determining the open and obvious nature of the hazard. We

11

concluded that, considering the low profile of the pallet, reasonable persons could disagree whether the pallet was open and obvious and posed an unreasonable risk of harm. Such a determination would potentially ensure or preclude Grisby's ability to recover from Porter House.

We further noted that while a trial court may determine by summary judgment that a defect is open and obvious and does not present an unreasonable risk of harm, in this instance, a genuine issue of material fact existed, and the trial court erred in granting summary judgment in favor of Porter House.

In this case, the plaintiff did not see the flatbed cart which was stationed on the right side of the aisle at the end of the glass display counter entering the large junction area where the escalators are located. Based on our review of the video footage of the accident, Ms. Pistorius glanced behind her at about the time she would have been roughly parallel with the handled end of the cart, and she turned her head back forward when she was at the front end of the cart just as she tripped over it. Obviously, she was turning to her right when the incident occurred since she did not run into the cart at the handled end, but then tripped over its front left corner. It is clear that she never saw the cart as she advanced toward its location. Similarly, Ms. Richardson testified at her deposition that she also never saw the cart until after the trip and fall accident. Both Ms. Pistorius and Ms. Richardson testified that the handle of the cart was on the store entrance side of the cart, and Ms. Pistorius tripped over the end corner of the cart opposite the handle.

While a shopper may typically encounter grocery carts and stocking carts in grocery stores and in home improvement stores like Home Depot, where the latter provides customers with use of the flatbed carts as well as

ordinary shopping carts, it is not typical to see such carts in stores like Dillard's, a department store that sells mostly clothing, shoes, accessories, and some home goods. Customer purchases are placed in plastic shopping bags after the sale. Carts are not provided. The presence of any cart on the main aisle in Dillard's is not something a regular customer like Ms. Pistorius would expect or be on the lookout to encounter, especially in the frenzied and chaotic atmosphere of the New Year's Day sale where panic buying is rampant.

Most importantly, even though the cart in question is very large, it is a horizontal flatbed that sits very low on the floor, perhaps only 6 or 8 inches high, and made of darker wood planks. Although the metal handle at one end is waist high and painted a light color, its visibility may have been somewhat diminished when parked adjacent to the glass display case. The horizontal width of this cart took up approximately 30% of the aisle (approximately 10 feet wide) and 3/5 or 60% of the right side of the aisle where it was situated. The front-end corner of the cart that Ms. Pistorius tripped over appears to have been at or near the junction point of the aisle. Ms. Pistorius apparently intended to go to the right, so she looked behind her to see if Ms. Richardson was close by, turned back around and immediately tripped and fell to the right over the front corner of the ankle-high cart.

After review, considering the location where the flatbed cart was parked in the main aisle near the main junction in the store, along with its low profile in a crowded store of eager shoppers at the New Year's Day sale, we find that reasonable persons could disagree whether the flatbed cart was open and obvious and whether it posed an unreasonable risk of harm – a determination that would ensure or preclude the plaintiff's ability to recover

13

from the defendant. As such, we therefore find that a genuine issue of material fact exists in this case. The trial court erred in granting summary judgment in favor of Dillard's.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court granting the motion for summary judgment by the defendant, Higbee Louisiana, d/b/a Dillard's, and dismissing with prejudice the claims of the plaintiff, Anna L. Pistorius, is reversed, and the matter is remanded to the trial court for further proceedings. Costs are to be paid by Higbee Louisiana, d/b/a Dillard's.

**REVERSED AND REMANDED.**