STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0978

FELICIA HAWKINS

VERSUS

HI NABOR SUPERMARKET, LLC AND TRAVELERS

*Judgment Rendered:* FEB 2 3 2024

* * * * * * * *

**Appealed from the**
**19th Judicial District Court**
**In and for the Parish of East Baton Rouge**
**State of Louisiana**
**Case No. C673175, Sec. 23**

**The Honorable Kelly Balfour, Judge Presiding**

* * * * * * * *

| | |
|---|---|
| Kathleen M. Wilson<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant<br>Felicia Hawkins |
| Janice M. Reeves<br>Mandeville, Louisiana | Counsel for Defendant/Appellee<br>Hi Nabor Supermarket, LLC |

* * * * * * * *

BEFORE: THERIOT, PENZATO, AND GREENE, JJ.

**THERIOT, J.**

In this supermarket trip-and-fall case, the plaintiff appeals a summary judgment dismissing her suit. For the reasons set forth herein, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff, Felicia Hawkins, filed the instant suit on August 27, 2018, seeking damages for injuries she allegedly sustained on August 27, 2017, when she tripped and fell over a stocking cart while shopping at Hi Nabor Supermarket on Winbourne Avenue in Baton Rouge. Hawkins' petition alleged that the stocking cart "constituted a vice, defect, ruin, and unreasonably dangerous condition, whereby it created an unreasonable risk of harm to residents, including [Hawkins], which was foreseeable."

On February 6, 2023, defendant, Hi Nabor Supermarket, L.L.C. ("Hi Nabor"), filed a motion for summary judgment, seeking dismissal of all of Hawkins' claims against it. Hi Nabor asserted that Hawkins lacked factual support for an essential element of her claim, i.e., that the premises had a vice or defect or unreasonably dangerous condition, and that it is entitled to summary judgment as a matter of law. In support of its motion for summary judgment, Hi Nabor filed Hawkins' petition for damages; the affidavit of its Risk Manager, Cristi Guerin, with the store's surveillance video of the incident attached; the affidavit of its Store Manager, Thomas Porter; and excerpts from Hawkins' deposition. Hi Nabor's motion was set for hearing on March 27, 2023.

Hawkins did not file an opposition to Hi Nabor's motion for summary judgment. However, after the time period for filing an opposition had expired,[1] Hawkins' counsel filed a motion to continue the hearing on Hi Nabor's motion. Hi Nabor opposed the motion to continue, pointing out that this is an "old lawsuit," discovery is complete, and while Hawkins had ample time since the filing and

---

[1] Absent the consent of the parties and the court, an opposition to a motion for summary judgment must be filed and served not less than fifteen days prior to the hearing on the motion. La. C.C.P. art. 966(B)(2).

2

service of the motion on or around February 6, 2023 to prepare an opposition, she did not do so and waited until less than a week before the hearing on the motion for summary judgment to file a motion to continue. In light of Hi Nabor's opposition to the continuance, Hawkins then filed a motion for leave to file a late response to the motion for summary judgment and again requested a new hearing date. Although there was an opposition to the motion for summary judgment attached to Hawkins' motion, she did not attempt to file any documents in support of her opposition. The trial court denied Hawkins' motion.

A hearing was held on the motion on March 27, 2023. Neither Hawkins nor her attorney was present. On April 4, 2023, the trial court signed a judgment stating that it considered "the pleadings, memoranda, and exhibits attached thereto," and found the law and evidence to be in favor of Hi Nabor. Accordingly, the trial court granted Hi Nabor's motion for summary judgment and dismissed all of Hawkins' claims with prejudice.

Hawkins appealed, arguing that the trial court erred in granting summary judgment "solely because an opposition was filed late" and without sufficient proof that movers were entitled to judgment as a matter of law.

## DISCUSSION

Louisiana Code of Civil Procedure article 966 was recently amended by 2023 La. Acts. Nos. 317, § 1, and 368, § 1, effective August 1, 2023. This court has determined that the 2023 amendments to La. C.C.P. art. 966, which expanded the exclusive list of documents that are considered competent evidence in support of or in opposition to a motion for summary judgment and changed the duties of parties in supporting and opposing motions for summary judgment, are substantive and therefore cannot be applied retroactively. See *Ricketson v. McKenzie*, 2023-0314, p. 7-9 (La.App. 1 Cir. 10/4/23), --- So.3d ---, ---; see also La. C.C. art. 6 ("In the absence of contrary legislative expression, substantive laws apply prospectively

3

only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."). Accordingly, we will apply the version of La. C.C.P. art. 966 in effect at the time of the March 27, 2023 hearing to the matter before us. See Ricketson, 2023-0314 at p. 10, --- So.3d at ---.

Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Troncoso v. Point Carr Homeowners Ass'n*, 2022-0530, p. 16 (La.App. 1 Cir. 1/10/23), 360 So.3d 901, 913.

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.* The mover on a motion for summary judgment can meet its burden of proof on the motion by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical

4

records, written stipulations, and admissions with its motion for summary judgment. La. C.C.P. art. 966(A)(4). The court may only consider those documents filed in support of or in opposition to the motion for summary judgment. La. C.C.P. art. 966(D)(2).

Although the court may only consider those documents filed in support of or in opposition to the motion for summary judgment, the failure to file an opposition to a motion for summary judgment does not automatically require that the motion be granted, as the initial burden of proof is on the mover. See *Auricchio v. Harriston*, 2020-01167, p. 5 n.2 (La. 10/10/21), 332 So.3d 660, 663 n.2; La. C.C.P. art. 966(D)(2). See also La. C.C.P. art. 966(A)(3) ("[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact *and that the mover is entitled to judgment as a matter of law*." [emphasis added]).

Although Hawkins argues on appeal that the trial court erred in granting summary judgment dismissing her suit solely because of her failure to file a timely opposition, the record does not support this assertion. As previously noted, the trial court's judgment states that the trial court considered "the pleadings, memoranda, and exhibits attached thereto," and found the law and evidence to be in favor of Hi Nabor. This assignment of error has no merit.

The remaining issue before us on appeal is whether summary judgment was properly rendered under La. C.C.P. art. 966(B)(1), i.e., whether the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Troncoso*, 2022-0530 at p. 17, 360 So.3d at 914.

The Merchant Liability Act, La. R.S. 9:2800.6, provides that a merchant must make a reasonable effort to keep its premises free of any hazardous conditions which reasonably might give rise to damage. La. R.S. 9:2800.6(A). A hazardous or unreasonably dangerous condition is a condition that creates an unreasonable risk of harm to customers under the circumstances. *Campbell v. Dolgencorp, LLC*, 2019-0036, p. 9 (La.App. 1 Cir. 1/9/20), 294 So.3d 522, 529. Thus, under the Merchant Liability Act, a plaintiff injured by a condition of a merchant's premises must prove all of the following: (i) the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable; (ii) prior to the occurrence, the merchant either created or had actual or constructive notice of the condition which caused the damage; and (iii) the merchant failed to exercise reasonable care. La. R.S. 9:2800.6(B).

The issue before the trial court on Hi Nabor's motion for summary judgment was the first element of proof, i.e., whether the stocking cart presented an unreasonable risk of harm to Hawkins and whether that risk of harm was reasonably foreseeable. Determining whether a condition creates an unreasonable risk of harm requires balancing the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of preventing the harm. Louisiana courts have adopted a four-part risk-utility balancing test to determine whether a condition presents an unreasonable risk of harm. This test requires consideration of: (i) the utility of the complained-of condition; (ii) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition;[2] (iii) the cost of preventing the harm; and (iv) the nature of the plaintiff's activity in terms of its social utility or whether it is

___

[2] Although the fact that a condition on a merchant's premises was open and obvious previously barred recovery, the Louisiana Supreme Court has recently clarified the "open and obvious doctrine," holding that the fact that a condition is open and obvious is simply a factor to be considered in the second prong of the risk-utility balancing test (the likelihood and magnitude of harm, including the obviousness and apparentness of the condition), but is not necessarily a bar to recovery. *Farrell v. Circle K Stores, Inc.*, 2022-00849, pp. 12-13 (La. 3/17/23), 359 So.3d 467, 478.

6

dangerous by nature. *Latour v. Steamboats, LLC*, 2023-00027, pp. 8-9 (La. 10/20/23), 371 So.3d 1026, 1035-36. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. *Id.*

In support of its motion, Hi Nabor filed the affidavit of its Risk Manager, Cristi Guerin, who attested that following Hawkins' report of a fall, surveillance video was captured depicting the incident involving Hawkins. Guerin attested that she viewed the video and that it showed Hawkins standing in front of a yellow caution cone, then walking around and behind the stocking cart to look at meat in a refrigerated display case, then turning around and running into the stocking cart, and finally making a report of the incident to the store manager.

A copy of the store surveillance video of the incident was attached to Guerin's affidavit. The video shows the stocking cart in place in front of the refrigerated meat display, with two large yellow caution cones placed in front of it, when Hawkins approached. The stocking cart was a rectangular flatbed cart with tall sides (approximately Hawkins' height). Cardboard boxes were stacked almost all the way to the top of one side of the cart and about half as high on the other side, with a space in between the two stacks of boxes. Hawkins initially stood behind the yellow caution cones and peered between the stacks of boxes on the cart at the meat in the refrigerated meat display, and then walked around the cart to stand between the stocking cart and the refrigerated meat display to look more closely at the meat in the display. At no point while Hawkins was in the area was the cart or any of its contents moved. After looking at the meat in the refrigerated display, Hawkins turned around and walked right into the stocking cart that was directly in front of her, falling over the cart.

Hi Nabor also filed the affidavit of its Store Manager, Thomas Porter, in support of its motion. Porter was on duty on August 27, 2017, and took Hawkins'

7

verbal report of the incident. Porter attested that on the date of the incident, Hawkins reported to him that the stocking cart was not there when she walked up to look at the meat, but while she was looking at chicken, someone pushed the stocking cart behind her and left it. Porter further attested that store surveillance video was captured of the incident and that he watched the video and did not see anyone push the cart behind Hawkins. According to Porter's affidavit, "[t]he surveillance [video] showed Hawkins stood near the yellow caution cone and then she walked around and behind the stocking cart to get a closer look at the meat. She picked up a package of chicken and then laid it down. She then turned and ran into the cart."

Hi Nabor also filed excerpts from Hawkins' deposition in support of its motion for summary judgment. Hawkins testified that she had personally used stocking carts to bring out and stock shelves with refrigerated produce, although it was unclear from her testimony when she did so. Although Hawkins attempted to recount the details of the August 27, 2017 incident, her deposition was taken more than five years later, and she had some difficulty remembering exactly where she walked and what she saw on that date. Hawkins testified that on the date of the incident, she walked around the stocking cart to look at the meat in the refrigerated display case, and after looking at the meat and deciding the prices were too high, she turned to leave and fell over the stocking cart. Hawkins confirmed that the stocking cart was there when she walked up, and although she initially testified that she walked around it to get to the refrigerated display case, later in her deposition she said, "I don't know if I walked around it, or if I passed by it and walked to the meat case, but it ain't like I saw it." Hawkins testified, "I . . . didn't pay attention to the meat thing when I was walking around to go to the meat. I'm trying to see. It was sitting there and I turned – I was going this way and I turned around to go back to look at the meat. And I was walking from – and walking

8

down the aisle and looking up from the different meats . . . and I was saying the meat and stuff was too high, and I turn around to walk off and that's when I tripped over the meat – the meat thing." Attempting to clarify her testimony, Hawkins explained that although she saw the stocking cart when she approached, and it was there the whole time, she was not paying attention to or thinking about the stocking cart behind her until she tripped and fell.

The Second Circuit in *Russell v. Morgan's Bestway of Louisiana, LLC*, 47,914, pp. 7-8 (La.App. 2 Cir. 4/10/13), 113 So.3d 448, 452-53, applied the risk-utility balancing test to determine whether two stocking carts placed side-by-side in a grocery store aisle presented an unreasonable risk of harm:

> As shown by the photos of the accident scene, each of the stocking carts lined up along the dairy case section of the store is approximately four to five feet in length. The metal platform where merchandise is stacked for transporting appears to be approximately eight inches off the floor and supported by the four small wheels of the cart. At one end of the stocking cart is a tall metal stand, perpendicular to its platform with an extended bar for pushing the cart. Clearly, a single cart empty of any merchandise and located along a store aisle would be an obstacle that would be obvious to a shopper. Unless such cart was located in a place where the shopper might unexpectedly encounter it and trip, one obvious stocking cart does not present an unreasonable risk of harm. Its utility for stocking merchandise is a necessity, and its common use and obviousness to a shopper make any risk slight.

> The alleged hazard in this case, however, goes beyond the risk associated with one stocking cart. There were two carts side-by-side and [plaintiff] stepped between those carts to access the dairy case. That area between the carts was estimated at between three and four feet, which was a somewhat narrow area in which to maneuver. Turning to leave that area with her cream cheese product in hand, [plaintiff] tripped on a cart.

> The utility of the complained-of condition relates to Bestway's need to have the stocking carts on the aisles of the store from time to time when store customers are present. The utility and need may be diminished somewhat in this case as the situation arose from an unusual event involving the late arrival of the delivery truck. The "cost of preventing harm" can also be viewed as basically inconsequential to the store as the carts could have been placed in a different manner by Bestway around the store or even outside the building.

9

An assessment of the likelihood and magnitude of harm involving the obstruction caused by these multiple stocking carts shows that harm to customers would be unlikely. The carts are clearly large and obvious. A customer might be inconvenienced by the cart placement and might need a cart to be moved to obtain a grocery item. However, [plaintiff] did not testify that she was blocked from reaching the cream cheese. After selecting her item, she simply tripped on the stocking cart as she turned to leave the dairy case. The time indicator from the still frames of the videotape of the accident shows that her maneuver in between the two carts occurred in a matter of seconds, and she tripped inadvertently on one of the carts.

Finally, the nature of plaintiff's activity was that of a normal shopper. She did not do anything risky in choosing to walk into the space between the carts.

From this review, we find that the facts are undisputed as revealed by the actual event shown on the still frames from the videotape. Even though there were multiple stocking carts involved, we find this situation so open and obvious that [plaintiff] was able to observe the carts and easily avoid any risk of harm. Generally, there are different display arrangements and other observable obstacles in the aisles of a grocery store. While a shopper might trip on such obstacles, including this arrangement of multiple carts, we do not find that this situation presents an unreasonable risk of harm making the store responsible in this instance.

As noted by the court in *Russell*, stocking carts are necessary and useful in grocery stores to restock shelves, and their common use and obviousness to a shopper make any risk slight. *Russell*, 47,914 at p. 7, 113 So.3d at 453; see also *Pistorius v. Higbee Louisiana, LLC*, 54,780, pp. 13-14 (La.App. 2 Cir. 2/8/23), 356 So.3d 1204, 1210, *writ denied*, 2023-00331 (La. 5/2/23), 359 So.3d 1290 ("[S]hopping carts and stocking carts are a common sight in grocery stores, and their presence is not unexpected. . . . [G]rocery shoppers . . . are generally attuned to be on the lookout for such obstructions."). The evidence filed in support of Hi Nabor's motion for summary judgment shows that Hawkins was familiar with stocking carts, having used them herself to stock produce, and that she saw and maneuvered around the one involved in this case, which had yellow caution cones placed in front of it, prior to falling over it. She acknowledged that she was not paying attention to her surroundings or thinking about what was behind her after

maneuvering around the stocking cart. Hawkins offered no evidence in opposition to summary judgment to show that the stocking cart presented an unreasonably dangerous condition.

The burden of proving that a condition is unreasonably dangerous is on the plaintiff, and failure to prove the existence of an unreasonably dangerous condition is fatal to a plaintiff's merchant liability claim. See *Wyrick v. Golden Nugget Lake Charles, LLC*, 2020-0665, p. 8 (La.App. 1 Cir. 12/30/20), 317 So.3d 708, 713 (Under the heavy burden of proof imposed by the Merchant Liability statute, if any one of the statutory elements cannot be established, the claimant's entire action will fail.). On our de novo review, reviewing the evidence filed in support of the motion for summary judgment in light of the applicable law, we conclude that there were no genuine issues of material fact and Hi Nabor was entitled to summary judgment as a matter of law.

## CONCLUSION

The April 4, 2023 judgment granting Hi Nabor Supermarket, L.L.C.'s motion for summary judgment and dismissing Felicia Hawkins' claims with prejudice is affirmed. Costs of this appeal are assessed to plaintiff, Felicia Hawkins.

**AFFIRMED.**

11